IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

CLARA NOLEN,

    Plaintiff,

vs.                                                  Case 2:11-cv-02832-JPM-cgc

FEDEX TECHCONNECT, INC.

    Defendant.

---

**REPORT AND RECOMMENDATION OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendant's Motion for Summary Judgment (Docket Entry "D.E." #28). The instant motions was referred to the United States Magistrate Judge for Report and Recommendation. (D.E. #31). For the reasons set forth herein, the Magistrate Judge RECOMMENDS that Defendant's Motion for Summary Judgment (D.E. # 28) be GRANTED

**I. Procedural Background**

On September 23, 2011, Plaintiff Clara Nolen ("Nolen") filed a Pro Se Complaint (D.E. # 1) pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Family and Medical Leave Act of 1993, 29 U.S.C. § 621 et seq. ("FMLA") against Defendant FedEx Services ("FedEx"). Prior to Nolan filing the instant action, she initially filed charges of discrimination with the Tennessee Fair Employment Commission and with the Equal Employment Opportunity Commission on June 1, 2010. (Complaint ¶¶ 6–7). The Equal Employment Opportunity Commission issued a notice of Nolen's Right to Sue on July 7, 2011. (Complaint ¶ 8). The District Court then permitted Nolen to proceed in forma pauperis. (D.E. #

1

5). The District Court next issued an Order correcting the docket to add Defendant FedEx Corporate Services, Inc., and remove Defendant FedEx Services. (D.E. # 6).

Defendant FedEx Corporate Services answered Plaintiff's complaint on December 21, 2011. (D.E. # 8). Defendant next moved to amend its answer pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. (D.E. # 13). FedEx averred that Nolen worked for and was terminated by a subsidiary of FedEx Corporate Services, Inc., which was named at the time "FedEx Customer Information Services, Inc." and does business as "FedEx TechConnect, Inc." (Id.) The District Court granted Defendant's Motion to Amend its Answer on February 17, 2012, (D.E. # 16) and Defendant filed its First Amended Answer on February 20, 2012 (D.E. # 17).

On January 4, 2013, Defendants filed the instant Motion for Summary Judgment. (D.E. #28). Nolen then filed a Motion to Compel on February 8, 2013. (D.E. # 28). The Magistrate Judge issued an order on March 27, 2013 for the Plaintiff to show cause as to why the Court should not consider the Motion for Summary Judgment and recommend granting of the motion. (D.E. #32). Plaintiff has yet to respond to the Motion for Summary Judgment. Plaintiff instead moved for an Extension to Show Cause (D.E. # 33) and moved to Amend her Complaint (D.E. # 34) on April 9, 2013. The Magistrate Judge denied the Motion to Compel and Motion for Extension to Show Cause on April 12, 2013. (D.E. # 36). The Magistrate Judge recommended that the District Court deny Plaintiff's Motion for Leave to Amend on April 12, 2013. (D.E. # 37).

**II. Proposed Findings of Fact**

Plaintiff Nolen is an African-American who was employed by FedEx as a Senior Customer Support Trace Representative, under the supervision of her manager Andreia Sanders. (Defendant's Statement of Material Undisputed Facts "Def. SOF" ¶ 1 & Deposition of Clara Nolen "Nolen Depo." pg. 133, Exh. 36). Calls made by Trace Representatives are routinely monitored for customer service and training purposes. (Def. SOF ¶ 2; Deposition of Clara Nolen "Nolen Depo.", pg. 149 & Exh. 43). On May 11, 2009, Nolen's manager, Andreia Sanders was alerted to a customer's complaint regarding a call made by Nolen the previous day. (Def. SOF ¶ 3; Nolen Depo. pg. 46 & Exh. 5). On May 12, 2009, Ms. Sanders asked Nolen to review the asserted complaint against her and be prepared to discuss it with her. (Def. SOF ¶ 4; Nolen Depo. pgs. 47–49 & Exh. 6). Nolen explained that the customer was both initially rude and uncooperative with her. (Def. SOF ¶ 4; Nolen Depo. pgs. 49–54 & Exh. 7). After Ms. Sanders listened to the call, she sent Nolen a warning letter in which she agreed with the customer's assertion that Nolen was rude with the customer on the phone and used a short, sarcastic tone. (Def. SOF ¶ 5; Nolen Depo. pgs. 55–56 & Exh. 9).

Ms. Sanders then issued Nolen a three-day suspension without pay on May 27, 2009. (Def. SOF ¶ 6–7; Nolen Depo. pgs. 56–61 & Exh. 9). The warning letter sent to Nolen also explain that the warning letter was active for the next twelve months and additionally, "3 notifications of deficiency (i.e., any combination of warning letters and/or reminders) received within a 12-month period may result in your termination." (Nolen Depo. Exh. 9). Ms. Nolen filed a complaint through FedEx's Fair and Impartial Review Procedure "FAIR" against Ms. Sanders regarding the three day suspension. (Def. SOF ¶ 9; Nolen Depo. pgs. 57–59, 62–64 & Exh. 8). On July 17, 2009, FedEx's internal FAIR program upheld the three-day suspension. (Def. SOF ¶ 9; Nolen Depo. 63–64 & Exh. 11). Nolen underwent coaching sessions with Ms.

Sanders and other individuals in October and November 2009 to improve her customer service skills. (Def. SOF ¶ 8; Nolen Depo. pgs. 68–72, 75–82 & Exh. 15, 16).

On August 17, 2009, Nolen applied for FMLA leave on August 17, 2009 to attend weekly therapy sessions for depression and anxiety. (Def. SOF ¶ 20; Nolen Depo. pgs. 152–155 & Exh. 46, 47, 48). FedEx granted Nolen FMLA leave from August 17, 2009 to February 17, 2010. (Nolen Depo. Exh. 48). Subsequently to granting Nolen FMLA leave, on December 4, 2009, Nolen was found in violation of the Customer Abuse/Work Avoidance policy due to her failure to make a required call on November 30, 2009. (Def. SOF ¶ 10; Nolen Depo. 82–86 & Exh. 17). Nolen was issued a written counseling and the letter further explained that additional occurrences would not be tolerated and could result in additional disciplinary action. (Def. SOF ¶ 10; Nolen Depo. Exh. 17). Nolen was next issued a warning letter on May 18, 2010 after Ms. Sanders performed a quality audit on one of Nolen's calls on April 21, 2010 and April 29, 2010. (Def. SOF ¶ 11–13; Nolen Depo. 102–105 & Exh. 20). Then on May 18, 2010, Nolen was terminated by FedEx because she had "demonstrated a recurring pattern of customer abuse and [had] been advised that recurrent patterns of misconduct cannot be tolerated." (Def. SOF ¶ 17; Nolen Depo pgs. 105–107 & Exh. 21). The termination letter also explained that Nolen had "continuously displayed actions towards customers that are unacceptable and tarnish the integrity of the FedEx Brand and our service." (Nolen Depo. Exh. 21).

### III. Legal Standards

#### A. *Pro Se Litigants*

The Magistrate Judge initially notes that Plaintiff Nolen is proceeding as a pro se litigant in this matter. Pleadings filed by pro se litigants are to be "construed more liberally than pleadings drafted by lawyers." Williams v. Bowman, 981 F.2d 901, 903 (6th Cir. 1992). While

pro se litigants are afforded this less stringent standard, "pro se plaintiffs are not automatically entitled to take every case to trial . . . . the lenient treatment generally afforded to pro se litigants has limits." Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996). The 6th Circuit has held that there is no requirement to provide nonprisoner pro se litigants the benefit of special assistance with respect to summary judgment motions. Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988); see also U.S. v. Ninety Three Firearms, 330 F.3d 414, 427–28 (6th Cir. 2003). The Court in Brock decided to afford pro se non prisoner litigants no special assistance "out of a sense of fairness to other parties who choose counsel and must bear the risk of their attorney's mistakes. Thus, a litigant who chooses *himself* as a legal representative should be treated no differently." Brock, 840 F.2d at 343 (alteration in original) (quoting Jacobsen v. Filler, 790 F.2d 1362, 1364–65 (9th Cir. 1986) (internal quotation marks omitted).

### B. *Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment pursuant to Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Thaddeus-X v. Blatter, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001).

5

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., Federal Practice and Procedure § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion . . . ." Fed. R. Civ. P. 56(e)(2). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

*C. Title VII Race Discrimination*

Under Title VII, discrimination of the basis of "race, color, religion, sex, or national origin" constitutes an unlawful employment practice. 42 U.S.C. § 2000e-2(a). A plaintiff may establish a claim of disparate treatment based upon race either by introducing direct evidence of discrimination or by proving circumstantial evidence which would support an inference of discrimination. Kline v. Tennessee Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." Id.

Under the direct-evidence approach, a plaintiff must present evidence that, "if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 2000) (emphasis added). To successfully pursue a direct-discrimination claim, the evidence must establish, *without any inferences or presumptions*, that discriminatory motives caused the adverse employment action. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000)(emphasis added); see also Brack v. Shoney's, Inc., 249 F. Supp. 2d 938, 947 (W.D. Tenn. 2003). If the plaintiff introduces evidence of an adverse employment action on the basis of his protected status, the burden of production and persuasion shifts to the employer to prove that it would have taken the adverse employment action even had it not been motivated by discrimination. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1081 (6th Cir. 1994) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 244-45 (1989)).

Under the circumstantial evidence approach, the tripartite test established in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802–05 (1973), and later clarified in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253–56 (1981), applies to determine if the conduct violated Title VII. First, a plaintiff must establish a prima facie case of discrimination, which requires as follows: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly situated, non-protected employees. DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004).

If plaintiff establishes the prima facie case, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. If the defendant

meets this burden, then a plaintiff must prove that the reason proffered by the defendant is a pretext to hide unlawful discrimination. Id. The plaintiff may establish that the proffered reason is a mere pretext by showing that the stated reasons had no basis in fact, that the stated reasons were not the actual reasons, and that the stated reasons were insufficient to explain the defendant's action. Wheeler v. McKinley Enters., 937 F.2d 1158, 1162 (6th Cir. 1991). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

### D. *FMLA Retaliation*

The Family and Medical Leave Act, 29 U.S.C. §§ 2611–2619, provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following . . . ." 29 U.S.C. 2612(a)(1)(A)–(E) (Supp. 2009). The Act deems it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." Id. § 2615(a)(1). The Act additionally provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Id. § 2615(a)(2).

The Sixth Circuit recognizes two theories of recovery under the FMLA, the entitlement or interference theory and the retaliation theory. Edgar v. JAC Products, Inc., 443 F.3d 501, 506–07 (6th Cir. 2006). When analyzing the entitlement theory, "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA-for example, a twelve-week leave or reinstatement after taking a medical leave." Id. at 507 (quoting Arban v. W. Pub. Co., 345 F.3d 390, 401 (6th Cir. 2003). For a plaintiff to prevail on an entitlement

claim, the plaintiff must prove that: (1) they were an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) the plaintiff was entitled to leave under the FMLA, (4) the plaintiff gave the employer notice of their intention to take leave, and (5) the employer denied the employee FMLA benefits to which the employee was entitled. Id.

The relevant inquiry under the retaliation theory "is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." Id. (quoting Hodgens v. General Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998)). Furthermore, "[a]n employer's motive is an integral part of the analysis because retaliation claims impose liability on employers that against employees specifically *because* those employees invoked their FMLA rights. Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 707 (6th Cir. 2008) (alteration in original) (quoting Edgar, 443 F.3d at 508) (internal quotations omitted). In analyzing claims of retaliation with indirect evidence under the FMLA, the Sixth Circuit applies the burden-shifting analysis from McDonnell Douglas. Edgar, 443 F.3d at 508. A Plaintiff can make a prima facie case of retaliation by showing that: (1) the plaintiff availed himself of a protected right under the FMLA by notifying his employer of his intent to take leave, (2) the plaintiff was adversely affected by an employment decision when he was discharged, and (3) the proximity in time between the plaintiff's request for leave and his discharge constitutes indirect evidence of a casual connection between his exercise of a right under the FMLA and the adverse employment decision. Skrjanc, 272 F.3d at 315. If the Plaintiff succeeds in proving a prima facie case of discrimination, the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason for [the plaintiff's] discharge." Id. If the employer then "articulates such a reason, then [the plaintiff] has the burden of showing that the articulated reason is in reality a pretext to mask discrimination." Id.

An FMLA retaliation based upon direct evidence of discrimination does not proceed under the McDonnell Douglas analysis. Daugherty, 544 F.3d at 707; Dicarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004). Direct evidence is defined as, "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Daugherty, 544 F.3d at 707 (quoting Dicarlo, 358 F.3d at 415). The Sixth Circuit explained that analysis under direct evidence "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." Id. The evidence must establish both that "not only the plaintiff's employer was predisposed to discriminate on the basis [of the FMLA], but also that the employer acted on that predisposition." Id. (alteration in original). If an employee presents direct evidence of improper motive, that employee "does not bear the burden of disproving other possible nonretaliatory reasons for the adverse action." Id. Instead, "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." Id.

**IV. Proposed Conclusions of Law**

Plaintiff has not responded to the order entered on March 27, 2013 for Plaintiff to respond to FedEx's motion for summary judgment. Summary judgment cannot be granted "in favor of a movant simply because the adverse party has not responded." Carver v. Bunch, 946 F.2d 451, 455 (6th Cir. 1991). But "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008) (quoting Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479–80 (6th Cir. 1992) (internal quotation marks omitted). As such, the Court must still "intelligently and carefully review the legitimacy of such an unresponded-to motion, even as it refrains from

10

actively pursuing advocacy or intenting the *riposte* for a silent party." Guarino v Brookfield Tp. Trustees, 980, F.2d 399, 407 (6th Cir. 1992). Thus, "the trial court may rely upon the facts presented and designated by the moving party. St. Clair at *2 (quoting Guarino at 404) (internal quotation marks omitted).

### A. Race Discrimination under Title VII

It is recommended that Nolen has presented no direct evidence of discrimination in this case. As the Motion for Summary Judgment is unopposed, the Court has no contested facts or other evidence to consider. The nonmoving party "cannot rest upon the mere allegations or denials in his pleadings but must present specific facts showing that there is a genuine issue for trial." Warren v. Nelson, No. 2:05-CV-81, 2007 WL 677164 (E.D. Tenn. Mar. 1, 2007) at *1. Furthermore, [t]o defeat a motion for summary judgment a plaintiff can no longer rely on the conclusory allegations of its complaint." Warf v. U.S. Dept. of Veteran's Affiars, No. 11-2570, 2013 WL 1458702 (6th Cir. Apr. 11, 2013) at *2. In order to defend against summary judgment, the nonmoving party "must present significant probative evidence in support of its complaint to defeat the motion for summary judgment." Expert Masonry, Inc. v. Boone County, Ky., 440 F.3d 336, 341 (6th Cir. 2006). Therefore, as there has been no direct evidence presented "which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions" Wexler v. White's Fine Furniture, 317 F.3d 564, 570 (6th Cir. 2003), it is recommended that there is no Title VII race discrimination claim supported by direct evidence.

It is further recommended that Nolen has failed to establish a prima facie claim of Title VII discrimination under the circumstantial evidence approach. To establish a Title VII race discrimination claim under the circumstantial evidence approach, Nolen must first prove a prima

facie case of discrimination under the McDonnell Douglass framework. Di Carlo, 358 F.3d at 414. Taking the four elements in turn, and relying upon Defendant's statement of undisputed material facts, and other materials submitted, the Court recommends that Nolen cannot state a prima facie case of discrimination under Title VII. As an African-American, Nolen is a member of a protected class or minority (Nolen Depo. Exh. 36). The Magistrate Judge assumes that Nolen was qualified for the position because she was employed with FedEx for "25 years" and as a Customer Service Representative since "January 2000." (Nolen Depo. Exh. 36). Furthermore, Defendant has not offered any evidence that Nolen was anything other than qualified for her position. Nolen satisfies the third prong of McDonnell Douglass because she suffered an adverse employment action when FedEx terminated her May 18, 2010. (Def. SOF ¶ 18). But Nolen has not demonstrated that "someone outside [her] protected class was treated differently than a similarly-situated, non-protected employees." DiCarlo, 358 F.3d at 415.

FedEx's Statement of Material Facts states that Brian Kohanyi, a Caucasian former employee of FedEx was terminated on December 14, 2009 after accumulating three deficiency notices within the preceding twelve-month period. (Def. SOF ¶ 18). Nolen has offered no evidence of FedEx's disparate treatment of her was different than other similarly-situated, non-protected employees, nor has she offered evidence that Brian Kohanyi was not a similarly situated employee. An analogous case to the present matter is Gibson v. Shelly Co., 314 F. App'x 760 (6th Cir. 2008). In Gibson, as in the present matter, the Sixth Circuit found that the plaintiff presented no evidence that the defendant treated him differently than other similarly-situated, non-protected employees. Gibson v. Shelly Co., 314 F. App'x 760, 768 (6th Cir. 2008).

As Nolen has failed to make a prima facie case for discrimination under Title VII, 42 U.S.C. §§ 2000e *et seq.*, or to establish discrimination by direct evidence, it is recommended that

that the District Court grant FedEx's Motion for Summary Judgment as to Nolen's Title VII race discrimination claim.[1]

## B. *FMLA Retaliation*

The Court recommends that Defendant's Motion For Summary Judgment on Plaintiff's FMLA claims be granted.[2] As Nolen has provided no evidence in support of her FMLA retaliation claim, the Court will "rely upon the facts presented and designated by the moving party." Guarino, 980 F.2d at 407. In analyzing Nolen's claims of FMLA retaliation, the Court notes that Nolen has "present[ed] [no] significant probative evidence in support of [her] complaint to defeat the motion for summary judgment", Wexler, 317 F.3d at 570, and therefore recommends that there is no direct evidence in support of Nolen's claim for FMLA retaliation.

Turning to analysis under the retaliation theory with circumstantial evidence approach, it is recommended that Nolen cannot make a prima facie claim of FMLA retaliation. FedEx concedes that Nolen meets the first two requirements of a prima facie FMLA retaliation claim. See Memorandum in Support of Defendant's Motion for Summary Judgment at pg. 11 ("There is no dispute that Nolen can satisfy the first three elements of her prima facie case."). First, Nolen

---

[1]. If Nolen had succeeded in stating a prima facie case of discrimination, then the employer would have the burden of "articulate[ing] some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). FedEx has a clear written policy in its Customer Information Services Manual that states "[t]hree notifications of deficiency within a 12-month period normally result in termination." (Def. SOF ¶ 14 & Declaration of Bridget Zaborski "Zaborski Dec." Exh. A). This policy is also contained in the Customer Support Standard Operating Procedure Manual. (Def. SOF ¶ 15 & Zaborski Dec. Exh. B). Nolen was aware of this policy when she acknowledged reading the Customer Support Standard Operation Procedure Manual. (Def. SOF ¶ 16 & Zaborski Dec. Exh. B). Therefore, as Nolen has not offered any evidence that FedEx's termination decision was pretextual, the undersigned would still recommend granting FedEx's Motion for Summary Judgment in the event of Nolen establishing a prima facie claim of discrimination.

[2]. Nolen appears to advance only FMLA retaliation claims. If Nolen did attempt to advance claims under the interference or entitlement theory, she would have to be able to prove that: (1) she was an eligible employee; (2) FedEx was an employer as defined in the FMLA; (3) she was entitled to leave under the FMLA and (4) she gave FedEx notice of her intention to take leave. (Def. SOF ¶ 20–21). But FedEx did not deny Nolen any days of FMLA leave that she requested. (Id. ¶ 22). Therefore, it is recommended that Nolen cannot state a claim under the entitlement or interference theory. See Edgar v. JAC Products, Inc., 443 F.3d 501, 506–07 (6th Cir. 2006) (discussing the elements a plaintiff must prove under the entitlement theory).

availed herself of a protected right under the FMLA by notifying FedEx of her intent to take leave. (Def. SOF ¶ 20–21). Second, Nolen was adversely affected by an employment decision when FedEx discharged her. (Def. SOF. ¶ 17). FedEx granted Nolen FMLA leave for all requested days. (Def. SOF ¶ 22). But Nolen cannot establish a casual connection between her exercise of a right under the FMLA and the adverse employment action.

Regarding the proximity in time between Nolen's request for leave and the discharge, the Sixth Circuit has held that none of its prior decisions "squarely stand for the proposition that temporal proximity alone may never show a casual connection." Clark v. Walgreen Co., 424 F. App'x 467, 473 (6th Cir. 2011) (quoting Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 524 (6th Cir. 2008). The Sixth Circuit has analyzed various time frames when establishing the casual connection between the adverse employment action and the request for FMLA leave. See, e.g. Id. at 473 (finding that the temporal proximity of the employee's return from leave in January and his discharge in March was sufficient evidence of a casual connection); Bryson v. Regis Corp., 498 F.3d 561, 570–71 (6th Cir. 2007) (determining that an employee who was terminated three months after requesting FMLA leave was sufficient evidence of a casual connection); Randolph v. Ohio Dept. of Youth Servs., 453 F.3d 724, 737 (6th Cir. 2006) (finding a four month gap between the employee availing himself of the protected action and the employer's termination was insufficient on its own but if there was other indicia of retaliatory conduct it could be sufficient to find a casual connection). The Sixth Circuit has further reasoned "[i]n analyzing the facts in temporal proximity cases, we have always looked at the totality of the circumstances to determine whether an inference of retaliatory motive can be drawn." Vereecke v. Huron Valley Sch. Dist., 609 F.3d 392, 401 (6th Cir. 2010).

With this framework in mind, it is recommended that Nolen cannot state a prima facie claim of retaliation under the FMLA because she has not demonstrated a sufficient casual connection through the proximity in time between her termination and availing herself of a protected right under the FMLA. As Nolen has not responded to FedEx's Motion, Nolen has disputed none of the facts asserted by FedEx, nor has Nolen offered her own facts to contradict those of FedEx. Therefore, as Nolen has not presented "significant probative evidence in support of [her] complaint to defeat the motion for summary judgment [,]" Expert Masonry , 440 F.3d at 341, it is recommended that FedEx's Motion for Summary Judgment be granted on the Issue of FMLA retaliation.[3]

**V. Conclusion**

For the reasons set forth herein, it is RECOMMENDED to the District Court that Defendant's Motion for Summary Judgment be GRANTED. It is RECOMMENDED that Nolen cannot state a prima facie claim for Title VII Discrimination and cannot state a prima facie claim for FMLA discrimination. Furthermore, the Magistrate Judge RECOMMENDS that if Nolen could state a claim for prima facie discrimination under Title VII and retaliation under the FMLA, FedEx has articulated a legitimate non-discriminatory reason for Nolen's discharge because Nolen was discharged after three deficiency notices within a twelve-month period; a policy which Nolen was aware of. As Nolen has not offered any facts to dispute FedEx's

---

[3]. If Nolen had proven a prima facie case of FMLA retaliation, the burden would then shift back to FedEx "to articulate a legitimate, nondiscriminatiory reason for [the plaintiff's] discharge." Skrjanc, 272 F.3d at 315. FedEx has clearly met this burden because Nolen was discharged for her recurrent instances of violations of the Acceptable Conduct and Customer Abuse policies. Next, the burden would shift back to Nolen to prove that "the articulated reason is in retaliatory a pretext to mask discrimination." Id. As discussed above, this policy provided that three instances of deficiency within a twelve-month period could result in termination. FedEx has met its burden of showing a legitimate reason for Nolen's discharge, and Nolen as not articulated any reasoning that would show the articulated reason was pretext for discrimination. Therefore, it is recommended that should Nolen have met her prima facie claim of FMLA retaliation, FedEx has articulated a non-discriminatory reason for her discharge, and Nolen has not demonstrated that the articulated reason was pretextual.

Motion, Nolen has not demonstrated that her discharge was pretextual. Accordingly, it is RECOMMENDED that FedEx's Motion for Summary Judgment be GRANTED in its entirety.

**DATED** this 19th day of April, 2013.

>s/ Charmiane G. Claxton
>CHARMIANE G. CLAXTON
>UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN TEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**